## COMMONWEALTH *vs.* FRANK R. PRINCE.

Essex.   November 4, 1909. — December 1, 1909.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Food.   Board of Health*, State, Municipal.

In the elaborate system of statutes of this Commonwealth which are intended to prevent the sale for food of meat which is diseased and dangerous to the public health, there is nothing which in terms makes it an offense to sell for food the carcass of a cow condemned as diseased by an authorized agent of the board of health.

*It seems*, that an inspector, appointed by the State board of health under R. L. c. 75, § 5, has no right to displace an inspector appointed by a municipal board of health under § 102 of the same chapter, who in the performance of his duty is engaged in the careful examination of carcasses at a slaughter house under the rules of the board of cattle commissioners and is stamping with an official stamp a carcass which he is of opinion is wholesome and fit for food.

A member of the board of health of a town, appointed under R. L. c. 75, § 102, by the board of which he was a member to carefully examine under the rules and regulations of the board of cattle commissioners the carcasses of animals slaughtered at a certain slaughter house, to stamp with an official stamp carcasses which he determined to be wholesome and to seize and cause to be destroyed any carcass which he determined to be unwholesome or unfit for food, was of the opinion that the carcass of a certain cow was wholesome and was prepared to stamp it when an inspector of the State board of health after an examination, being of opinion that the carcass was unwholesome, "declared the meat condemned," and at his request the inspector for the municipal board of health attached red tags to the carcass, signifying that it was condemned. After the inspector for the State board had departed, the local inspector and one other member of the municipal board, the two forming a majority of the local board, made a careful examination of the carcass and declared it to be healthy and fit for food, and the local inspector thereupon removed the red tags and stamped the meat with the official stamp of approval. The meat was fit for human food. The owner sold the meat, and was arrested upon a complaint which charged that he " did knowingly sell for food a carcass . . . condemned as diseased by an authorized agent of [the State] board of health, said carcass being unfit for food by reason of disease." At the trial of the complaint in the Superior Court on appeal from a district court, the foregoing facts being admitted, the presiding judge ordered a verdict of guilty, and the defendant alleged exceptions. *Held,* that the local inspector at no time was ousted from his jurisdiction to determine whether to approve and stamp the carcass as fit for food, that therefore the sale by the defendant was justified, and that the defendant's exceptions must be sustained.

COMPLAINT in two counts, received and sworn to in the First District Court of Essex on April 13, 1909, charging in the first count that the defendant " with force and arms . . . did prevent,

obstruct and interfere with the State board of health, its officers and agents, in the performance of its duties as provided in the laws of said Commonwealth, and did hinder, obstruct, and interfere with the examination and inspection of a certain carcass of a cow by removing said carcass after condemnation and refusing to deliver the same to properly authorized agent of said board, who demanded its surrender "; and charging in the second count that the defendant " did knowingly sell for food the carcass of a certain cow condemned as diseased by an authorized agent of said board of health, said carcass being unfit for food by reason of disease, against the peace of said Commonwealth, and contrary to the form of the statutes in such cases made and provided."

On appeal to the Superior Court, the case was tried before *Fox*, J. It seems that the facts, which are stated in the opinion, were admitted to be true. On such facts, the defendant asked the presiding judge to rule that the defendant was entitled to acquittal. The judge refused so to rule, but ruled that upon the admitted facts the defendant was guilty on the second count of the complaint. The jury accordingly returned a verdict of guilty; and the defendant alleged exceptions.

The case was submitted on briefs.

*A. P. White*, for the defendant.

*H. C. Attwill*, Assistant District Attorney, for the Commonwealth.

KNOWLTON, C. J. The first count in the complaint against the defendant was *nol prossed*. The second count, on which he was convicted, charged that he " did knowingly sell for food a carcass of a certain cow condemned as diseased by an authorized agent of said board of health, said carcass being unfit for food by reason of disease, against the peace of the Commonwealth," etc.

We have an elaborate system of statutes intended to prevent the sale, for food, of meat which is diseased and dangerous to the public health. Some of them are found in R. L. c. 75, §§ 100 to 106, as amended, and in c. 56, §§ 70, 71, in St. 1903, c. 220, and in St. 1908, c. 329. There is nothing in either of these statutes which in terms makes it an offense to sell for food the carcass of a cow condemned as diseased by an authorized

agent of the board of health. We can conceive of circumstances in which this might be done without the violation of any law, although ordinarily such an act would be punishable, as containing elements that would bring it within some provision of the statutes. It is made an offense, by St. 1903, c. 220, to sell a carcass, or any part thereof, that is not stamped or branded by the inspector, as required by law. But the defendant was not charged with this offense. The only part of this count of the complaint which conforms to the statute is that part which charges the sale for food of the " carcass of a certain cow . . . , said carcass being unfit for food by reason of disease," etc. This is prohibited by the St. 1908, c. 329, § 1. As to this part of the complaint the bill of exceptions states that " it was admitted that the meat of said carcass was fit for human food." This allegation of the complaint is thus admitted by the Commonwealth to be false. The St. 1903, c. 220, § 1, provides that carcasses of animals not stamped or branded as required by law " shall be deemed unfit for human food." It has not been expressly contended by the Commonwealth that an allegation of fact which is conceded at the trial to be untrue is established by proof of the existence of other facts which the statute declares shall be deemed to be the equivalent of the fact alleged. It is not necessary to pass upon the question thus stated, for the case shows other facts that render it immaterial.

As to most matters pertaining to the inspection of food, including the carcasses of slaughtered animals, the inspectors of the State board of health and those of the city and town boards of health seem to be of equal authority. That any of them can interfere to change the effect of completed official action by another officer of equal authority we do not intimate. We can conceive of conflicts of authority, between different officers attempting to act independently, that might give rise to difficult questions. In the present case it appears that Stanley was the duly appointed and qualified inspector of the board of health of Wenham, under the R. L. c. 75, § 102. By virtue of his appointment he had a special duty to perform, namely, to be present at the defendant's slaughter house upon the days designated for slaughtering, and there carefully to examine the carcasses of all animals at the time of slaughter. It is to be

presumed that he was acting under rules and regulations of the board of cattle commissioners. If he found any meat unwholesome or unfit for food, it was his duty to "seize it and cause it to be destroyed." The bill of exceptions shows that he was at the slaughter house in the performance of his duties under this statute, and after being there throughout the slaughtering, and making an examination, he formed an opinion that the carcass was healthy and fit for human food. He had with him the proper stamp, and was ready to stamp the carcass, waiting only for the carcass to be washed and dried so that the letters of the stamp would remain distinct. At this juncture Dr. Voss, an inspector of the State board of health, came to the premises, and found in the lungs a small part affected with tuberculosis, which he described as the size of the end of his thumb, and other witnesses described as a small nodule as big as a pea. Thereupon he "declared the meat condemned," and at his request Stanley attached red tags to the carcass, signifying that it was condemned. Soon after, Dr. Voss having departed, Stanley, with Dr. Eaton, a regular physician and a member of the board of health of the town, and the two together constituting a majority of the board of health, made a long and careful examination of the lungs and carcass, and both declared them to be healthy and fit for human food. As a result of their joint determination, Stanley removed the tags, and thereupon stamped the meat with his official blue stamp of approval. The defendant afterwards sold the meat. Upon these admitted facts the judge ruled as matter of law that he was guilty.

Stanley was in the performance of a special official duty, under the R. L. c. 75, § 102, different from that of the inspector of the State board. Dr. Voss had no right to displace him in the performance of that duty. Dr. Voss did not seize the carcass and cause it to be destroyed forthwith, or disposed of otherwise than for food. He seems rather to have acted in an advisory capacity. All that was done with the carcass was done by Stanley. He put the tags upon it at Voss's request. Voss went away and left him still there in the performance of his official duty. He did not choose to treat the attaching of the tags as a final determination, but continued his inspection with the aid of another physician. The final result of his

official action, which continued from the beginning of the slaughtering until he stamped the carcass with his approval, was to authorize the sale of the meat for food. We are of opinion that he was never ousted from his jurisdiction to determine as an inspector whether to approve and stamp the carcass as fit for food. This jurisdiction he had under the R. L. c. 75, § 102, and under the St. 1903, c. 220. He did not cease to act officially, and there was no attempt to interfere with his official power and authority. If the meat was to be seized as unfit for food, he was the only inspector who remained there to do it. Dr. Voss gave him the benefit of his professional opinion; but we find nothing to indicate that he undertook to displace and supersede him in the official control of the business which he had in charge.

If it be said that the matters discussed in the last paragraph cannot be ruled as matter of law upon the facts agreed, but were matters of fact to be passed upon by the jury, this does not relieve the Commonwealth of difficulty. The case was taken from the jury, who were directed to return a verdict of guilty.

We are of opinion that the ruling of the Superior Court was erroneous.

*Exceptions sustained.*